United States District Court
Southern District of Texas
**ENTERED**
March 30, 2021
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:20-cv-00021

CHARLES HARMON, ET AL., *Plaintiffs*,

v.

SHELL OIL COMPANY, ET AL., *Defendants*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE.

Before the court is Fidelity's motion to dismiss.[1] Having considered the parties' arguments, the pleadings, supplemental authorities, and the applicable law, the court grants the motion.

## I. BACKGROUND

The plaintiffs bring suit both individually and as representatives of a class against Fidelity, Shell Oil Company, and other defendants for violations of the

---

[1] Dkt. 91. "Fidelity" refers collectively to FMR LLC; Fidelity Brokerage Services LLC; Fidelity Investments Institutional Operations Company, Inc.; Fidelity Investments Life Insurance Company; Fidelity Personal Trust Company, FSB; and Fidelity Personal and Workplace Advisors LLC.

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.[2] Their allegations concern a retirement plan Shell offers to eligible employees—the Shell Provident Fund 401(k) Plan ("the Plan").[3] It is a defined-contribution plan in which each participant has her own retirement account; the amount credited to that account reflects the participant's contributions, the employer's matching or profit-sharing contributions, and the performance of the Plan's participant-selected investment options, net of fees and expenses.[4]

Defendant Fidelity Investments Institutional Operations Company, Inc. ("FIIOC") is the Plan's record keeper.[5] The other Fidelity defendants are FMR LLC, FIIOC's parent, and four other FMR LLC subsidiaries.[6] In its role as record keeper, FIIOC maintains information about participants, including their names, contact information, social-security numbers, financial information, investment history, identity of their investments, account balances, investment contribution amounts, age, income, marital status, call-center notes, and information regarding

---

[2] *See* Dkt. 84 at ¶ 2.
[3] Dkt. 84 at ¶ 10.
[4] *Id*. at ¶¶ 8, 12.
[5] *Id*. at ¶ 27.
[6] *Id*. at ¶ 33.

"triggering events," such as when a plan participant is nearing retirement. The parties refer to this collection of information as "participant data."[7]

The plaintiffs allege FIIOC uploads this participant data into a customer-interaction software program that is shared with various Fidelity affiliates, including the other FMR LLC subsidiaries, who then use the participant data "to solicit the purchase of nonPlan retail financial products and services," such as IRAs, credit cards, and managed accounts.[8] According to the plaintiffs, Fidelity derives substantial revenue from the use of this data, through the sale of individual retirement accounts, high-interest credit cards, life insurance, banking products, advisory accounts, individual brokerage accounts, options trading accounts, 529 accounts, and other retail products and services.[9] The plaintiffs accuse Fidelity of peddling these products to Plan participants, including using participant data to solicit the named plaintiffs via multiple platforms, such as phone calls, in-person meetings, and emails.[10] The plaintiffs allege the participant data are "plan assets" under ERISA, which makes FIIOC a fiduciary of the Plan participants, and makes profiting from the data a violation of its fiduciary duties.

---

[7] *Dkt. 84* at ¶ 157.

[8] *Id.* at ¶¶ 161–63, 174.

[9] *Id.* at ¶ 174.

[10] *Id.*

Based on these allegations, the plaintiffs assert three claims against Fidelity. In Count IV, the plaintiffs allege FIIOC is a plan fiduciary because of its control over participant data. FIIOC breached its fiduciary duties, the plaintiffs say, by sharing participant data with affiliates for the purpose of benefiting Fidelity "and not for the exclusive purpose of providing benefits to Plan participants and beneficiaries."[11] In Count VII, the plaintiffs allege Shell transferred plan assets—the participant data— to Fidelity, that Fidelity used that data to market retail products and services, and that together this conduct constitutes a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).[12] In Count IX, the plaintiffs seek to enjoin Fidelity from using participant data to market retail products to Plan participants going forward.[13]

## II. STANDARD OF REVIEW

The Supreme Court has recognized that motions to dismiss are a particularly "important mechanism for weeding out meritless [ERISA] claims."[14] Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[15] Rule 12(b)(6) authorizes the court to dismiss a

---

[11] *Dkt.* 84 at ¶¶ 229–31.

[12] *Id.* at ¶¶ 251–59.

[13] *Id.* at ¶¶ 266-268.

[14] *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

[15] Fed. R. Civ. P. 8(a)(2).

complaint for "failure to state a claim upon which relief can be granted."[16] To survive a 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[17] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[18] The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.[19] Although Rule 8 does not require "detailed factual allegations," "it demands more than . . . labels and conclusions."[20] At the motion-to-dismiss stage, a court "must accept all well-pleaded facts alleged in the complaint as true and must construe the allegations in the light that is most favorable to the plaintiff."[21]

---

[16] Fed. R. Civ. P. 12(b)(6). For the purposes of this opinion, the court assumes the plaintiffs have standing to bring their claims, and so will consider only Fidelity's arguments under Rule 12(b)(6) and not 12(b)(1).

[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[18] *Id.* at 556.

[19] *Id.*

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[21] *J&J Sports Prods., Inc. v. Live Oak Cty. Post No. 6119 Veterans of Foreign Wars*, No. C–08–270, 2009 WL 483157, at *3 (S.D. Tex. Feb. 24, 2009) (quoting *Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 550 (5th Cir. 2007)).

## III. DISCUSSION

### A. Count IV – Fiduciary Duty

The plaintiffs seek to hold FIIOC liable for breaching its alleged fiduciary duty by sharing participant data with other Fidelity entities which would then market their products to Plan members. Specifically, the plaintiffs argue that "FIIOC is a fiduciary because it exercises authority and control respecting management and disposition of Confidential Plan Participant Data."[22] But for this to hold true, the court would first have to rule that participant data are "plan assets" under ERISA.

To make that determination, the court first looks to the plain text of the statute.[23] ERISA provides that "the term 'plan assets' means plan assets as defined by such regulations as the Secretary [of Labor] may prescribe."[24] Two such regulations have been prescribed. The first reads:

> 29 CFR § 2510.3-101 - Definition of "plan assets" - plan investments.
>
> (2) Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment

---

[22] *Id.* at ¶ 229.

[23] *See United States v. Locke*, 471 U.S. 84, 95 (1985) (noting that courts are generally required "to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used'" in the statutory text (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962))).

[24] 29 U.S.C. § 1002(42).

company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that –

(i)   The entity is an operating company, or

(ii)  Equity participation in the entity by benefit plan investors is not significant.

Therefore, any person who exercises authority or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan.[25]

This regulation, which expressly defines "plan assets," provides that "the plan's assets include its investment," but makes no mention of any "data." The second regulation, focusing on "participant contributions" to the plan, likewise fails to mention "data."[26] Neither of the promulgated regulations either expressly or by any plain-language interpretation includes participant data as plan assets under ERISA.

This view—that participant data does not amount to "plan assets" under ERISA—comports with how other courts have ruled on this question. In *Divane v. Northwestern University*, for example, the court rejected claims almost identical to those here—that the plan sponsor violated ERISA by permitting the record keeper

---

[25] 29 CFR § 2510.3-101.

[26] 29 CFR § 2510.3-102.

to market products using participant data.²⁷ As in this case, the *Divane* plaintiffs failed to cite any court that has ever held that releasing or allowing someone to use confidential information constitutes a breach of fiduciary duty under ERISA.²⁸ The *Divane* court noted that "[i]n considering what constitutes a plan asset, courts consider 'ordinary notions of property rights under non-ERISA law.'"²⁹ And though the court acknowledged that confidential participant information "has some value," it could not "conclude that it is a plan asset under ordinary notions of property rights."³⁰

At least two other cases support the same conclusion: participant data are not plan assets under ERISA.³¹ The court finds no reason to depart from those holdings. The plaintiffs have failed to state a claim in Count IV and it is dismissed.

---

²⁷ No. 16 C 8157, 2018 WL 2388118, at *12 (N.D. Ill. May 25, 2018), *aff'd*, 953 F.3d 980 (7th Cir. 2020).

²⁸ *Id.*

²⁹ *Id.* (quoting *In re Fidelity ERISA Float Lit'n*, 829 F.3d 55, 60 (1st Cir. 2016).

³⁰ *Id.* (citing *Rejimas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 695 (7th Cir. 2015), and *Sexton v. Runyon*, No. 03-cv-291, 2005 WL 2030865 at *8 (N.D. Ind. Aug. 23, 2005)).

³¹ In *Patient Advocates, LLC v. Prysunka*, 316 F. Supp. 2d 46 (D. Me. 2004), the court considered a state statute requiring third-party plan administrators to disclose participant demographic, health, and payment information, and held that because such information was not a "plan asset" governed by ERISA, the statute was not preempted by ERISA. *Id.* at 47–49. In *Walsh v. Principal Life Insurance Co.*, 266 F.R.D. 232 (S.D. Iowa 2010), the court held that plan service providers were not fiduciaries when using plan data to market retail products. *Id.* at 248 ("While it may be improper under certain circumstances for a

### B. Count VII – Prohibited Transaction

Count VII, like Count IV, depends on participant data amounting to "plan assets." Because the court has determined that participant data does not meet the statutory definition of "plan assets," the plaintiffs have failed to state a claim in Count VII, and it is dismissed.

### C. Count IX – Injunctive Relief

The court granting injunctive relief requires the plaintiffs to prevail in either Count IV or Count VII. As the both of those counts have been dismissed, Count IX is, too.

\*   \*   \*

For the reasons above, the court grants Fidelity's motion to dismiss (Dkt. 91).

Signed on Galveston Island on this the 30th day of March, 2021.

                              JEFFREY VINCENT BROWN
                              UNITED STATES DISTRICT JUDGE

---

service provider to use confidential information for its own benefit, such an act is not a basis to conclude that the service provider is a fiduciary for the purposes of ERISA.").