IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| CHARLES HARMON *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 3:20-cv-00021 |
| SHELL OIL COMPANY *et al.*, | |
| *Defendants*. | |

NOTICE OF SUPPLEMENTAL AUTHORITY
FURTHER SUPPORTING CLASS CERTIFICATION

In *Chavez v. Plan Benefit Services, Inc.*, --- F.4th ---, No. 22-50368, 2023 U.S. App. LEXIS 21283 (5th Cir. Aug. 11, 2023), the Fifth Circuit affirmed certification of a broadly defined class of "all" 225,000 participants in a retirement plan trust. For the following reasons, *Chavez* further supports certification of Plaintiffs' proposed class here.

The *Chavez* plaintiffs bring ERISA claims like those here, alleging that FBG, the fiduciary and recordkeeper of two employee benefit trusts, "accepted excessive fees" for administration, "controlled disbursements from the trusts for its own benefit, and unlawfully procured indirect compensation."[1] *Id.* at *3, 6. The trusts include thousands of distinct benefit plans and employers: "224,995 participants and 2,994 plans in CERT," which covers retirement plans, and "68,066 participants and 350 plans in CPT," which covers health and welfare benefits. *Id.* at *2, 8–9. The district court certified two classes of "[a]ll participants and beneficiaries of plans" covered by each trust. *Id.* at *8–9.

---

[1] "Indirect compensation" often refers to a revenue-sharing arrangement. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022).

1

The Fifth Circuit affirmed. Reviewing standing *de novo*, the court concluded that the plaintiffs had Article III standing "under each possible methodology." *Id.* at *9–31. The court began its analysis by considering the nature of the claims, which are not only about the "charging of excessive fees" to participants, but also about the fiduciaries' "general practices" and "mismanagement of the trusts" as a whole. *Id.* at *10–11. The plaintiffs "have always sought to bring this action on behalf of members of the trust, not just employees who were allegedly charged excessive fees." *Id.* at *10. Thus, FBG's arguments that Plaintiffs lack "standing to challenge fees that they were never subjected to" were "best addressed during the Rule 23 analysis." *Id.* at *12.

The court concluded that the plaintiffs had standing under either of two methods adopted by other circuits: "the 'more intensive standing approach' and 'the more forgiving class certification approach.'" *Id.* at *24–25 (quoting *Angell v. Geico Advantage Ins. Co.*, 67 F.4th 727, 734 (5th Cir. 2023)).

Under the class certification approach, if the plaintiffs establish their standing to sue on each claim, the court "then proceed[s] to the Rule 23 analysis to determine whether Plaintiffs can adequately and fairly represent the entire group's interests." *Id.* at *25. The *Chavez* plaintiffs satisfied each Article III element by alleging that FBG abused its fiduciary authority "by hiring itself to perform services paid with funds from the CERT and CPT trusts, effectively devaluing the trusts and retirement benefits that Plaintiffs otherwise would have accrued," which could be redressed "by awarding monetary damages or other relief." *Id.* at *26.

The court reached the same conclusion under the standing approach, which considers

whether the Plaintiffs' injury "is so unique that it warrants an isolated remedy that would be inappropriate if extended to other class members" or "implicates 'a significantly different set of concerns' from the other potential class members." *Id.* at *27 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 265 (2003)). Because "each member of the class was subjected to" the "same general practices" of FBG in mismanaging the trusts, plaintiffs had not alleged a unique injury, and "the set of concerns here are identical between Plaintiffs and the unnamed class members." *Id.* at *28–29. Moreover, "Plaintiffs and the other class members undoubtedly have the same interest" in recovering losses, and "also share the same injury: FBG's mismanagement of trust funds and charging of excessive fees deprived them of some portion of the benefits that they were entitled to." *Id.* at *30. While the injuries occurred in the context of different agreements and employers, the harm to plaintiffs and other class members alike "occurred directly from FBG's misconduct." *Id.* at *30. Thus, the plaintiffs had standing to represent other participants allegedly harmed by that misconduct. *Id.*

Regarding Rule 23, the court held that the class was properly certified under Rule 23(b)(1)(B), because "deciding Plaintiffs' case as an individual action would have unwanted or impermissible effects" on other participants and "prosecuting separate actions" on the core issues of fiduciary status and breach "could substantially impair the putative class members' ability to protect their interests." *Id.* at *33–34. FBG's contrary argument ignored that in addition to recovering damages, plaintiffs also sought "a declaration that FBG must stop conduct causing future harm to the trusts and depriving the class of future benefits," which is relief that "undoubtedly involves the entire class"

and all participants in the trust. *Id.* at *35. Similarly, a merits decision on plaintiffs' request for disgorgement of FBG's profits "dispositively implicates the financial interests of potentially hundreds of thousands of contributors to the" trusts. *Id.* at *35–36.

By upholding a 225,000-member class of "[a]ll participants and beneficiaries" exposed to fiduciary misconduct, *Chavez* confirms that Plaintiffs' similar definition here—"[a]ll participants and beneficiaries of the Shell Provident Fund," Mot. at 7 (Doc. 159)—is proper and should be certified. Like *Chavez*, this case is not only about the charging of excessive fees or underperforming Tier III investments. Rather, Plaintiffs have consistently asserted that this case is about Shell's general fiduciary practices in managing the SPF as a whole and have consistently alleged that they bring this suit on behalf of *all* participants and beneficiaries, not just those who were charged excessive fees. Doc. 84 ¶¶ 1, 5, 202–03, p. 96; Mot. at 1–2 ("Plaintiffs are pursuing claims on behalf of the Plan to obtain remedies due to the Plan. . . . All participants share a common interest in establishing Shell's liability and obtaining remedies for the Plan. Any recovery to an individual participant's individual account derives from her allocation of the Plan's recovery."); Doc. 242 at 7 ("Plaintiffs allege not that Defendants breached their fiduciary duty by providing a handful of specific imprudent funds as in *Locascio* and *Singh*, but that Defendants had a flawed fiduciary process for monitoring the Plan as a whole.").

Because Plaintiffs' claims, like those in *Chavez*, are based on plan-wide conduct and remedies, Plaintiffs have standing "under each possible methodology." *Chavez*, 2023 U.S. App. LEXIS 21283, at *30. Plaintiffs satisfy the "class certification approach" by alleging that Shell abused its fiduciary authority by allowing the SPF's recordkeeper and

4

managed account provider to collect unreasonable compensation from SPF assets and improperly paying itself with SPF assets, which devalued the Plan as a whole and Plaintiffs' individual accounts. *Id.* at *26. Plaintiffs also satisfy the "standing approach": they do not allege any harm unique to themselves or which implicates a significantly different set of concerns from the harm to other potential class members. Rather, the harm to the named Plaintiffs and class members is identical—loss of retirement benefits from fiduciary mismanagement—and implicates identical concerns arising from Shell's general practices in mismanaging the SPF.

By analyzing the *named plaintiffs'* standing only, *Chavez* confirms Plaintiffs' position that proof of absent class members' damages is beyond the scope of the Rule 23 stage. *See* Reply at 1–4 (Doc. 188). Although *Chavez* did not directly address absent class member standing, the court acknowledged its "continuing obligation to address jurisdictional defects." *Id*. at *12. Thus, if certifying a class with uninjured members would create a jurisdictional defect, the court would have analyzed the absent class members' standing. That the court did not separately address the absent class members' standing further supports Plaintiffs' position that the standing inquiry at the class certification stage is properly limited to the named plaintiffs. Reply at 1–4.

Moreover, even if a showing of absent class member standing were required, *Chavez* further supports Plaintiffs' view that the relevant question is whether class members were *exposed* to the defendant's harmful practices—not whether they can ultimately *prove* damages at trial. *See* Reply at 3 (*"*Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct") (citing

5

*In re Deepwater Horizon*, 739 F.3d 790, 801 (5th Cir. 2014), and *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298, 302, 308 (5th Cir. 2009)); *see also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (class definition overbroad only if it includes "large numbers of class members who were never *exposed* to the challenged conduct to begin with"). *Chavez* found that the alleged harm to the named plaintiffs and class members was sufficiently similar because "each member of the class was *subjected to*" the "same general practices" of FBG in managing the trusts. 2023 U.S. App. LEXIS 21283, at *28 (emphasis added). Here, the named Plaintiffs and all participants were undeniably "subjected to" Shell's alleged imprudence in managing the SPF, which establishes standing for all participants. Nothing in *Chavez* supports Shell's argument, raised for the first time at hearing, that it was somehow the plaintiffs' burden to submit an expert report showing not only that absent class members were subjected to the fiduciary's imprudent practices, but that each member also sustained damages.

Indeed, Shell's new argument is contrary to law; even the more restrictive view "does not contemplate scrutinizing or weighing any evidence of absent class members' standing or lack of standing during the Rule 23 stage." Reply at 2 (quoting *Deepwater Horizon*, 739 F.3d at 801). That is why the only argument on this point that Shell actually included in its brief was an assertion that variations in absent class members' investment holdings and results created an intra-class conflict for Rule 23(a) purposes. *See* Opp. at 10–14 (ECF 171). But it is the *defendant's* burden to substantiate a purported intra-class conflict with evidence, and Shell presented none. Reply at 9–10, 12–14.

Accordingly, there is no evidence that any proposed class member invested their

6

entire account balance in a hypothetical Tier III "Kansas City Chiefs Fund." But assuming *arguendo* such persons exist, they still have standing and are proper class members. "[I]n the context of standing, as opposed to the merits," the fact that a plaintiff may have benefited from certain of the defendant's actions "does not offset the fact that she was harmed by others." *Peters v. Aetna Inc.*, 2 F.4th 199, 218 (4th Cir. 2021) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury.") (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.4 (3d ed. Oct. 2020 update)).[2]

While the Chiefs Fund investor may ultimately be unable to show *damages* on the merits, such participants still sustained an injury-in-fact for standing purposes. Outperforming the market, as the Chiefs Fund hypothetically did, necessarily requires active management. Because actively managed funds charge higher fees than passive index funds, active funds are more likely to pay revenue sharing. *Cf.* Exhibit C to Nabi Decl. (Doc. 173-2) (showing numerous index funds without revenue sharing). Thus,

---

[2] *See also Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 223 (3d Cir. 2013) ("A plaintiff does not lose standing to challenge an otherwise injurious action simply because he may also derive some benefit from it. Our standing analysis is not an accounting exercise[.]"); *Aluminum Co. of Am. v. Bonneville Power Admin.*, 903 F.2d 585, 590 (9th Cir. 1989) (finding standing because "[t]here is harm in paying rates that may be excessive, no matter what the [plaintiffs] may have saved"); *Almonor v. BankAtlantic Bancorp, Inc.*, No. 07-6186, 2009 WL 8412125, at *5 (S.D. Fla. July 15, 2009) ("While it may be true that Defendants' alleged breaches actually conferred a net benefit on Plaintiff, that fact is irrelevant to whether Plaintiff suffered an injury-in-fact or whether Plaintiff suffered a compensable loss under ERISA.").

participants who invested in the Chiefs Fund would have been harmed by the revenue sharing deducted from their investments, which contributed to unreasonable recordkeeping fees and improper payments to Shell. Accordingly, for standing purposes, the fact that a Chiefs investor may have benefited from Tier III investment performance "does not offset the fact that she was harmed by" revenue sharing. *Peters*, 2 F.4th at 218.

Finally, *Chavez* confirms that absent class members have standing by virtue of the equitable relief that Plaintiffs seek. Even those class members who have no recoverable damages have an interest in Plaintiffs' requests that Shell be enjoined "from future ERISA violations" and required to "disgorge to the Plan" all wrongfully obtained payments. Doc. 84 ¶ 263, pp. 96–97. Such relief "undoubtedly involves the entire class" and all SPF participants. *Chavez*, 2023 U.S. App. LEXIS 21283, at *35–36.

In sum, *Chavez* confirms that the Court should certify Plaintiffs' proposed class.

Respectfully submitted,

August 23, 2023

By: */s/ Michael A. Wolff*
Michael A. Wolff, Esq., Attorney-in-Charge
(Missouri Bar #38207, admitted *Pro Hac Vice*)
Sean E. Soyars, Esq., of counsel
(Missouri Bar #57317, admitted *Pro Hac Vice*)
SCHLICHTER BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115, Fax: (314) 621-5934
mwolff@uselaws.com
ssoyars@uselaws.com

*Attorneys for Plaintiffs*

Robert M. Tramuto, of counsel
Texas Bar #20186300
S.D. Texas Bar #6863
Jones Granger
10000 Memorial Drive, Suite 888
P.O. Box 4340
Houston, TX 77210
(713) 668-0230, Fax: (713) 956-7139
btra@jonesgranger.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Michael A. Wolff*
Michael A. Wolff
Attorney-in-Charge for Plaintiffs