United States District Court
Southern District of Texas
**ENTERED**
September 06, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| CHARLES HARMON, *et al.*, § § | |
| Plaintiffs. § § | |
| V. § | CIVIL ACTION NO. 3:20-cv-00021 |
| § | |
| SHELL OIL COMPANY, *et al.*, § § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiffs' Motion for Class Certification. Dkt. 159. Having reviewed the briefing, the record, and the applicable law, I recommend that the Motion for Class Certification be **GRANTED**.

## BACKGROUND

Plaintiffs Charles Harmon ("Harmon"), Brian Coble ("Coble"), and David Lawrence ("Lawrence") (collectively, "Plaintiffs") are current or former employees of Shell Oil Co. ("Shell") and beneficiaries of Shell's defined contribution 401(k) retirement plan, the Shell Provident Fund 401(k) Plan (the "Plan").

The Plan is among the largest 401(k) plans in the country, with more than 30,000 participants and more than $10 billion in assets. From around 1999 until the end of September 2020, the Plan offered participants four tiers of investment options:

- Tier 1 contains target date funds that automatically reallocate assets over time in an increasingly conservative posture as the fund's target retirement date approaches.
- Tier II contains a number of index funds.
- Tier III contained more than 300 investment options, including all of Fidelity's mutual funds. Shell removed Tier III from the Plan at the end of September 2020.

- Tier IV gives participants access to individual brokerage accounts and the ability to purchase thousands of investment options. The Plan contracts with Financial Engines Advisors LLC ("Financial Engines") to provide managed account services to those Plan participants who elect to use these optional services.

Plaintiffs brought this lawsuit under 29 U.S.C. § 1132(a)(2)–(3), asserting that Shell, Trustees of the Plan, and various Fidelity entities[1] breached their fiduciary duties in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001–1461.

In March 2021, Judge Jeffrey V. Brown dismissed all claims against the Fidelity entities. *See* Dkt. 138. He also dismissed several of Plaintiffs' claims against Shell and Trustees of the Plan (collectively, the "Shell Defendants"). *See* Dkt. 139. The remaining four counts in this lawsuit allege (1) breach of fiduciary duties related to unreasonable recordkeeping fees (Count I); (2) breach of fiduciary duties related to Plan investments (Count II); (3) breach of fiduciary duties related to unreasonable managed account fees (Count III); and (4) prohibited transactions between the Plan and Shell (Count VIII). I will briefly describe each remaining claim.

**Count I:** Fidelity Investments Institutional Operations Company Inc. ("Fidelity") is the Plan's recordkeeper. In that role, Fidelity (1) maintains participant accounts; (2) processes contributions, withdrawals, and distributions; (3) enrolls and terminates participants; and (4) prepares required disclosures.

From January 21, 2014 (the beginning of the purported class period) through the end of 2020, Fidelity provided recordkeeping services to the Plan for a flat annual rate of $30 per participant. This amount was paid with revenue sharing from certain investments in Tier III. "Revenue sharing" is an arrangement

---

[1] The Fidelity entities include FMR LLC; Fidelity Brokerage Services LLC; Fidelity Investments Institutional Operations Company Inc.; Fidelity Investments Life Insurance Company; Fidelity Personal Trust Company FSB; and Fidelity Personal and Workplace Advisors LLC.

allowing funds to share a portion of the fees that they collect from investors with entities that provide services to the funds. The practical effect of this fee structure, Plaintiffs insist, was that investors in certain Tier III mutual funds were responsible for paying the $30 recordkeeping fee on behalf of all Plan participants.

After Tier III was removed from the Plan, revenue sharing from Tier III funds could no longer provide the source for the $30 annual payment to Fidelity. Beginning in January 2021, each Plan participant was assessed an annual $60 fee. Half of the fee was earmarked to cover Fidelity's recordkeeping fee, and the other half was targeted to cover certain administrative expenses.

Plaintiffs claim that Fidelity has received additional compensation through revenue sharing from Financial Engines, the company that provides managed account services. Plaintiffs claim that the revenue sharing from Financial Engines has resulted in an enormous amount of additional recordkeeping compensation to Fidelity beyond its stated $30 annual per participant fee.

In Count I, Plaintiffs maintain that the Shell Defendants breached their fiduciary duties by failing to "monitor the amount of the revenue sharing received by the Plan's recordkeeper, determine if those amounts were competitive or reasonable for the services provided to the Plan, use the Plan's size to reduce fees, or obtain sufficient rebates to the Plan for the excessive fees paid by participants." Dkt. 84 at 81–82.

**Count II:** Plaintiffs allege that the Shell Defendants breached their fiduciary duties by failing to monitor the Tier III investments in the Plan. "By retaining every investment within Tier III," Plaintiffs contend that the "Shell Defendants retained an investment structure that was contrary to prudent investment practices and the actions and practices of other knowledgeable and diligent fiduciaries of similar defined contribution plans." *Id.* at 84.

According to Plaintiffs, those who invested in Tier III funds were not the only ones damaged by this allegedly imprudent investment strategy. Plaintiffs argue that retaining Tier III funds "also affected the fees of the investment options

3

in other tiers." Dkt. 188 at 11. "Once Tier II was removed, the fees of the Tier I and II funds declined substantially, demonstrating that Tier III harmed all [Plan] participants by driving up the fees charged to Tier I and Tier II investments until its removal." *Id.*

**Count III:** Managed accounts, like those made available by Tier IV, offer Plan participants the chance to obtain investment advice and professional management of their assets. As noted, the Plan contracted with Financial Engines to provide managed account services. In exchange for a fee, Financial Engines would assist Plan participants in creating and/or managing custom portfolios tailored to their specific needs. In Count III, Plaintiffs challenge the amount of the fees paid to Financial Engines. Plaintiffs insist that the Shell Defendants breached their fiduciary duties by failing to conduct regular requests for proposals to determine the market rate for managed account services, and that this failure resulted in excessive managed account fees.

**Count VIII:** Shell created a Trustee Support Unit to provide support services to the Plan, including (1) the engagement of third-party service providers; (2) handling claims for benefits; and (3) overseeing regulatory reporting and financial controls. Count VIII alleges that the Shell Defendants engaged in prohibited transactions under ERISA by improperly paying certain Plan-related administrative expenses using rebates that Fidelity paid Shell. According to Plaintiffs, the "Shell Defendants dealt with the assets of the Plan in their own interest and for their own account by diverting rebates to the Plan for reimbursement of employee salaries and fringe benefits and other expenses instead of recovering that revenue sharing for the Plan and Plan participants." Dkt. 84 at 93.

## PROPOSED CLASSES

Plaintiffs have moved to certify the following two classes under Federal Rule of Civil Procedure 23(b)(1):

> **Class 1 (Counts I, II, and VIII):** All participants and beneficiaries of the Shell Provident Fund 401(k) Plan from January 21, 2014, through the date of judgment, excluding the Defendants.
>
> **Class 2 (Count III):** All participants and beneficiaries of the Shell Provident Fund 401(k) Plan who utilized the Plan's managed account services from January 21, 2014, through the date of judgment, excluding the Defendants.

Dkt. 159 at 14. The Shell Defendants do not oppose the Class 2 definition.

Plaintiffs request that Lawrence, Coble, and Harmon be appointed as class representatives of Class 1. They ask that Lawrence and Coble be appointed as class representatives of Class 2. Finally, Plaintiffs ask that Schlichter, Bogard & Denton LLP be appointed as class counsel.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Class actions permit representative plaintiffs to litigate their claims on behalf of members of the class not before the court." *Caliste v. Cantrell*, No. 17-6197, 2018 WL 1365809, at *1 (E.D. La. Mar. 16, 2018). "The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually to bring them as a class." *Id.* (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983)). Many courts have held that ERISA breach of fiduciary claims "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases); *see also In re Enron Corp.*, No. 01-3913, 2006 WL 1662596, at *14 (S.D. Tex. June 7, 2006) (same).

Rule 23 governs class certification. Under Rule 23(a), Plaintiffs must satisfy four requirements—numerosity, commonality, typicality, and adequacy of representation—for a class action to proceed. *See* FED. R. CIV. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Numerosity requires a showing that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Commonality requires a showing that "there are questions of law or fact common to the class." *Id.* 23(a)(2). Typicality refers to the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id.* 23(a)(3). Adequacy mandates a showing that the representative party and the named class counsel "will fairly and adequately protect the interests of the class." *Id.* 23(a)(4).

Even where the four Rule 23(a) requirements are satisfied, certification is permitted only if there is an additional showing that the class action fits into at least one of three specified categories set forth in Rule 23(b). *See Wal-Mart*, 564 U.S. at 345. These categories are: (1) cases in which prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudication; (2) cases in which "the party opposing the class has acted or refused to act on grounds that apply generally to the class," so that final injunctive or declaratory relief is appropriate with respect to the class as a whole; or (3) cases in which "questions of law or fact common to class members predominate over any questions affecting only individual members" and the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b).

The Fifth Circuit recently addressed, in the context of an ERISA action, the "rigorous analysis" required to certify a class action under Rule 23. *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545 (5th Cir. 2020) (quoting *Wal-Mart*, 564 U.S. at 351). The *Chavez* panel emphasized that Rule 23 is not a pleading standard, explaining that district courts will often have to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law" to determine whether certification is appropriate in a given case. *Id.* at 546 (quotation omitted). The Fifth Circuit also instructed district courts to rigorously consider both Rule 23(a)'s four prerequisites and the Rule 23(b) class type before

6

certifying a class. *See id.* Plaintiffs have the burden of showing that Rule 23's requirements are met. *See Wal-Mart*, 564 U.S. at 350–51.

Moreover, "[s]tanding is an inherent prerequisite to the class certification inquiry." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001). This is because the standing inquiry "determines the court's fundamental power even to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). To satisfy standing under Article III of the U.S. Constitution, three elements must be met. "First, the plaintiff must have suffered an 'injury in fact' an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation omitted).

"To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) (emphasis added).

## ANALYSIS

### A.   THE SHELL DEFENDANTS' STANDING ARGUMENTS FAIL

The Shell Defendants first object to class certification under Rule 23 on the grounds that (1) Plaintiffs do not have standing to be named as class representatives in the manner that Plaintiffs have requested; and (2) the Class 1 definition would include many absent class members who lack standing, which Defendants argue is impermissible under Fifth Circuit guidance.

#### 1.   **Standing of Class Representatives**

In their class certification briefing, the Shell Defendants did not contest that Lawrence has standing on all remaining counts in this litigation. This is probably

because Lawrence appears to be the quintessential class representative for Counts I, II, III, and VIII. He was a Plan participant during the putative class period who invested in Tier III and used Financial Engines' managed account services.

At oral argument, the Shell Defendants questioned, for the first time, the scope of Lawrence's standing on Count I (recordkeeping fees). Specifically, the Shell Defendants queried whether Lawrence invested in any of the Tier III funds that paid Fidelity's fees through revenue sharing. The Shell Defendants further argued that even if Lawrence invested in Tier III funds that paid Fidelity's fees, his standing on Count I should be limited to the time period in which he invested in those funds. I gave Plaintiffs permission to supplement the record to respond to this argument. Plaintiffs did so. *See* Dkt. 247.

As evidenced by Plaintiffs' supplemental briefing and evidence, Lawrence invested in at least 13 Tier III funds that paid revenue sharing between January 21, 2014 and November 2018. *See id* at 1–3. Although this time period does not cover the entire class period, Article III standing does not require a participant to allege injury for the entire class period. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591–93 (8th Cir. 2009) ("[T]he district court erred in concluding that [the plaintiff] lacked standing to maintain claims for the period before he began participating in the Plan."). "[B]ecause [Lawrence] has alleged actual injury to his own Plan account," he "has satisfied the requirements of Article III." *Id.* at 592.

Having concluded that Lawrence has standing for Class 1, I am not required to assess whether Coble or Harmon are proper class representatives for Class 1. It is well-established that the standing inquiry requires "at least one" plaintiff to demonstrate standing. *Horne v. Flores*, 557 U.S. 433, 445 (2009). If one plaintiff has standing, I need not consider whether the other named plaintiffs have standing to maintain the suit. *See Rumsfeld v. Forum for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (holding that the Court "need not consider the standing issue as to"

8

other plaintiffs when one plaintiff has Article III standing); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) (holding that "we have at least one individual plaintiff who has demonstrated standing" and that "[b]ecause of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit"); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

As to Class 2, the Shell Defendants acknowledge that Lawrence and Coble, both of whom used Financial Engines' managed account services, have standing for Class 2.

Accordingly, I find that Lawrence has standing to represent Class 1 and Class 2, and Coble has standing to represent Class 2. Having found that at least one individual plaintiff has standing for each proposed class, I may continue with the class certification analysis.

### 2. Fifth Circuit Precedent Does Not Preclude Class Certification Where Absent Class Members Lack Standing

The Shell Defendants next argue that I cannot certify Class 1 because the proposed class definition encompasses "huge blocks" of absent class members who lack standing. Dkt. 171 at 13. As a refresher, Plaintiffs' proposed definition for Class 1 (which covers Counts I, II, and VIII) is:

> All participants and beneficiaries of the Shell Provident Fund 401(k) Plan from January 21, 2014, through the date of judgment, excluding the Defendants.

Dkt. 159 at 14. This definition, the Shell Defendants argue, impermissibly sweeps in Plan participants who either (1) did not invest in Tier III funds that were assessed fees used to pay for recordkeeping or Plan-related administrative expenses; or (2) invested in Tier III funds that performed favorably. These Plan

9

participants, the Shell Defendants claim, have not suffered an Article III injury and thus do not have standing.

To start, Plaintiffs emphasize that the Shell Defendants are mistaken in their belief that only those who invested in Tier III funds have suffered harm as a result of the Plan's decision to retain Tier III during most of the class period. Plaintiffs' expert witness Dr. Edward S. O'Neal estimates that the Plan's decision to keep Tier III in place until the end of September 2020 forced Tier I and II investors to incur an additional $6.3 million in Tier I and II fees that would have been eliminated had Shell removed Tier III at the start of the class period. *See* Dkt. 213-12 at 9; *see also* Dkt. 213-5 at 49 (Expert witness Donald C. Stone: "When Tier III was finally removed from the Plan in September 2020, because of the large amount of assets that moved into Tier I and Tier II, the Plan was able to reduce its fees on many Tier I and Tier II funds."). Given this, it seems clear to me that Plaintiffs have adequately alleged that those who did—and did not—invest in Tier III suffered an Article III injury as a result of the mere existence of the Tier III funds. All such unnamed class members thus have standing.

That leaves the Shell Defendants' argument that, even assuming the decision to retain Tier III was imprudent, not all those who invested in Tier III necessarily were damaged as a result of that decision. Some Plan participants, the Shell Defendants observe, might have invested in Tier III funds that increased in value. Plaintiffs have a quick retort. Even if the particular Tier III funds in which absent class members invested increased in value, Plaintiffs claim that "the measure of loss applicable under ERISA section 409 requires a comparison of what the Plan actually earned on the [imprudent] investment with what the Plan would have earned had the funds been available for other Plan purposes." Dkt. 188 at 12–13 (quoting *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985)). Retaining Tier III, Plaintiffs maintain, caused the Plan participants, as a whole, to lose over $70 million "compared to what those assets would have earned in an alternative, prudent lineup." Dkt. 84 at 28.

Still, it is entirely possible that a particular individual happened to invest in Tier III funds that outgained an alternative, prudent lineup of funds. Take a far-fetched hypothetical: assume an individual invested in a particular Tier III fund that increased by 10,000 percent. That would unquestionably be a superior return to an otherwise alternative, prudent lineup. Because the Class 1 definition might include these hypothetical individuals who actually benefited from investing in Tier III funds, the Shell Defendants argue that class certification is improper. The Shell Defendants maintain that I cannot certify a class that contains any absent class members who do not have standing. I disagree.

There are two competing approaches to evaluating absent class members' standing at the class certification stage: the Seventh Circuit's *Kohen* test or the slightly more exacting *Denney* test from the Second Circuit.

The *Kohen* test points out that it is "almost inevitable" that "a class will . . . include persons who have not been injured by the defendant's conduct . . . because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). According to *Kohen*, however, the "possibility" or "inevitability" of class members lacking standing "does not preclude class certification." *Id.* As such, *Kohen* focuses its Article III inquiry on named plaintiffs only. The Third and Eleventh Circuits have embraced the *Kohen* view that every class member is not required to demonstrate standing before a court certifies a class. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) ("A plaintiff need not prove that every member of the proposed class has Article III standing prior to certification."); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366 (3d Cir. 2015) ("We decline [the defendant]'s invitation to impose a requirement that all class members possess standing.").

The slightly less permissive *Denney* test scrutinizes the class definition to ensure that no class members lack Article III standing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006). The *Denney* standard does not,

11

however, require that each member of a class submit evidence of individual standing; rather, it demands that the class "be defined in such a way that anyone within it would have standing." *Id.* at 264.

It appears that the Fifth Circuit has already adopted the *Kohen* test. *See Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009). In *Mims*, the Fifth Circuit affirmed the certification of a class that potentially covered members who were ineligible for a discount on a title insurance policy that was the basis for all of plaintiffs' claims. *See id.* at 307–08. The Fifth Circuit stated that "[c]lass certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct." *Id.* at 308 (citing *Kohen*, 571 F.3d at 677). Although this statement was made in the context of analyzing Rule 23 rather than Article III, the *Mims* court earlier stated that "[t]here is no serious question that the plaintiffs have standing" after explicitly analyzing only "the named plaintiffs." *Id.* at 302.

Several recent Fifth Circuit panels have suggested that the Fifth Circuit "has not yet decided whether standing must be proven for unnamed class members, in addition to the class representative." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 768 (5th Cir. 2020); *see also In re Deepwater Horizon*, 785 F.3d 1003, 1019 (5th Cir. 2015) ("We have not directly addressed how to evaluate [absent class member] standing for the purposes of class certification."). Those statements are at odds with *Mims*'s holding affirming a class definition that potentially included class members without standing. It is firmly entrenched that "one panel of [the Fifth Circuit] cannot disregard, much less overrule, the decision of a prior panel." *F.D.I.C. v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998). Accordingly, if the Fifth Circuit wants to overrule *Mims* at some future date, so be it. But for now, I must follow *Mims*. Accordingly, the fact that Plaintiffs' proposed class definition may encompass some absent class members without standing does not preclude class certification.

12

Although a class certainly "should not be certified if it is apparent that it contains *a great many* persons who have suffered no injury at the hands of the defendant," I cannot presently make that assessment. *Kohen*, 571 F.3d at 677 (emphasis added). The Shell Defendants cursorily assert that not all Tier III participants might have suffered harm. What I do know from the class certification submissions is that Plaintiffs believe the Plan lost over $70 million due to the utilization of Tier III investments. Once a class is certified, Plaintiffs will have to conduct the necessary damage calculations, plaintiff by plaintiff, to determine whether each class member who invested in Tier III suffered damages. The Shell Defendants might very well offer their own damage calculations. "[A]t some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they could be granted any relief." *Cordoba*, 942 F.3d at 1274; *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages."). This just does not need to be done at the initial class certification stage.

**B.    PLAINTIFFS SATISFY THE RULE 23(a) REQUIREMENTS**

The Shell Defendants concede that Plaintiffs' claims satisfy the numerosity, commonality, and typicality factors under Rule 23(a). Indeed, Plaintiffs' claims easily satisfy these requirements.[3] As to numerosity, joinder would be highly impracticable because the Plan had over 10,000 participants and proposed class members during the class period. As to commonality, the evidence necessary to determine whether the Shell Defendants breached their fiduciary duties and the losses the Plan sustained relate to the Plan itself, and thus are the same for all Plan participants. As to typicality, each class representative's claims "have the same

---

[3] My "obligation . . . to conduct a rigorous analysis of Rule 23's requirements . . . is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements." *Ward v. Hellerstedt*, 753 F. App'x 236, 244 (5th Cir. 2018) ("'[T]he court [is] bound to conduct its *own* thorough . . . inquiry.'" (quoting *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002))).

13

essential characteristics of those of the putative class." *Stirman*, 280 F.3d at 562 (quotation omitted).

The Shell Defendants contest only the adequacy requirement under Rule 23(a)(4), arguing that the class is rife with intra-class conflict. Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). It "serves to uncover conflicts of interest between named parties and the class they seek to represent," as well as the "competency and conflicts of class counsel." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 & 626 n.20 (1997). "Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4)." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007). Yet, there is no real conflict here that precludes class certification.

The Shell Defendants' argument is that Plaintiffs' case theory pits class members who invested in certain Tier III funds against class members who invested only in Tiers I, II, and IV. Underlying Count I is Plaintiffs' contention that certain Tier III investors unfairly shouldered the burden of paying the $30 annual per participant recordkeeping fee on behalf of all Plan participants. Similarly, the Count VIII prohibited transaction claim asserts that certain Tier III funds paid for all of the Plan's administrative expenses, with those Plan participants who invested only in Tiers I, II, and IV avoiding their fair share of administrative expenses. "It is hard to imagine," the Shell Defendants assert, "that absent class members, who did not invest in Tier III would (or could) be satisfied with being represented by a Named Plaintiff such as Mr. Lawrence, who did, and whose counsel has maligned such absent members as free riders, unfairly leaching benefits from Named Plaintiffs like Mr. Lawrence." Dkt. 171 at 17.

This argument is not persuasive. As Plaintiffs point out, "if Shell were *continuing* to charge all fees to Tier III only, there could be antagonism between participants who wished to continue this arrangement and those who desired change." Dkt. 188 at 16. But that is not the situation at hand. At the end of

14

September 2020, Shell eliminated Tier III and the practice of charging only Tier III investors for recordkeeping and administrative fees incurred by all Plan participants. "Thus, the relief sought, recovery from *Shell* of excessive fees previously paid, cannot possibly harm any class member." *Id.*; *see also Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 814 (7th Cir. 2013) (finding "no risk that any [class member] who benefited from [the defendant]'s imprudent management would have her Plan assets reduced as a result of this lawsuit"); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *3 (M.D.N.C. Aug. 28, 2017) (rejecting claimed conflict because defendants failed to "provide[] any explanation of how a class member could possibly be harmed if damages were recovered on behalf of the Plan").

Adequacy is only defeated when there is a "fundamental" conflict "going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quotation omitted). Adequacy is not defeated by "merely speculative or hypothetical" conflicts. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010). It is clear that there is no fundamental conflict that prohibits Lawrence or Coble from representing the class. The economic interests and objectives of Lawrence and Coble do not differ significantly from the economic interests and objectives of unnamed class members. Notably, the Shell Defendants fail to articulate how the relief sought by Plaintiffs *from the Shell Defendants* could possibly harm putative class members. No class member faces the risk of having to disgorge any money to the Plan. In short, Lawrence and Coble—and all class members—share a common goal of establishing the liability of the Shell Defendants.

Accordingly, Plaintiffs have satisfied their burden of showing that the Rule 23(a) requirements are satisfied.

C. **PLAINTIFFS' CLASSES MAY BE CERTIFIED UNDER RULE 23(b)(1)**

In addition to satisfying the four requirements of Rule 23(a), a proposed class must fit one of the types of class actions listed in Rule 23(b). Here, Plaintiffs

argue that class certification is warranted under either Rule 23(b)(1) or Rule 23(b)(3). Tellingly, the Shell Defendants do not contest class certification under Rule 23(b), saying nary a word about Rule 23(b) in their 24-page brief opposing class certification.

Rule 23(b)(1)(A) provides for class certification where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A). ERISA fiduciary breach actions "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough*, 589 F.3d at 604.

I agree with Plaintiffs that "[a]llowing thousands of individuals to pursue separate actions on behalf of the Plan could result in varying adjudications on numerous issues, resulting in conflicting and incompatible standards of conduct for [the Shell Defendants]." Dkt. 159 at 31. For example, Plaintiffs seek to "remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations." Dkt. 84 at 96. As the Fifth Circuit posited in *Langbecker*, a "judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay." 476 F.3d at 318. Plaintiffs also ask the Court to "reform the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses" and "reform the Plan to obtain bids for managed account services and to pay only reasonable managed account service fees." Dkt. 84 at 97. A judgment that reforms the Plan in one case would be inconsistent with a judgment in another case not requiring reformation. Accordingly, I find that "[c]ertification under Rule 23(b)(1)(A) is . . . warranted" to avoid "contradictory rulings" and "inconsistent dispositions that would prejudice the [Shell Defendants]." *Enron Corp.*, 2006 WL 1662596, at *15.

Because I find that certification under Rule 23(b)(1)(A) is proper, I do not reach the Plaintiffs' arguments regarding Rule 23(b)(1)(B) or Rule 23(b)(3).

### D.   PLAINTIFFS' COUNSEL SATISFY RULE 23(g)'S REQUIREMENTS

Finally, Plaintiffs seek appointment of their current counsel from Schlichter, Bogard & Denton LLP as class counsel under Rule 23(g). Under Rule 23(g), "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g). In appointing class counsel, courts must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class." *Id.* 23(g)(1)(A). Class counsel has a duty to "fairly and adequately represent the interests of the class." *Id.* 23(g)(4).

I find that Schlicter, Bogard & Denton LLP satisfies the requirements of Rule 23(g). The firm has represented Plaintiffs from the inception of this lawsuit. It has been appointed as class counsel in 34 ERISA fiduciary breach class actions and has succeeded in obtaining monetary settlements and affirmative relief in many cases. *See* Dkt. 159-26 at 3, 6. Moreover, the firm has been recognized "as a pioneer and the leader in the field of retirement plan litigation." *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). The firm maintains that it "will commit all financial and personnel resources needed to effectively represent the class." Dkt. 159-26 at 6, 9. Therefore, I recommend that Schlicter, Bogard & Denton LLP be appointed as class counsel for both classes.

## CONCLUSION

For the reasons stated above, I recommend that the Motion for Class Certification (Dkt. 159) be **GRANTED** and the following classes be certified under Rule 23(b)(1)(A):

> **Class 1 (Counts I, II, and VIII):** All participants and beneficiaries of the Shell Provident Fund 401(k) Plan from January 21, 2014, through the date of judgment, excluding the Defendants.
>
> **Class 2 (Count III):** All participants and beneficiaries of the Shell Provident Fund 401(k) Plan who utilized the Plan's managed account

services from January 21, 2014, through the date of judgment, excluding the Defendants.

I recommend that Lawrence be appointed as the class representative for Class 1 (Counts I, II, and VIII).[4] I further recommend that Lawrence and Coble be appointed as class representatives for Class 2 (Count III).

I also recommend that Plaintiffs' current counsel from Schlichter, Bogard & Denton LLP be appointed as class counsel for both classes.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 6th day of September 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[4] Harmon also requests appointment as a class representative for Class 1. Defendants have raised a number of concerns regarding Harmon's standing. *See* Dkt. 171 at 9–11. I need not address those concerns. Because Lawrence is an adequate class representative for Class 1, I decline to consider Harmon as an additional class representative at this juncture. Should Lawrence prove unsuitable, the Court can revisit Harmon's adequacy as a class representative at such time.